UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:23-cr-342-JSM-SPF

LUIS CARLOS DIAZ MARTINEZ

**OPPOSITION TO DEFENDANT'S AMENDED MOTION FOR ISSUANCE OF LETTERS ROGATORY AND SUBPOENA**

For a third time, the defendant, Luis Carlos Diaz Martinez, requests that this Court issue a "Letters Rogatory and a Rule 17 subpoena duces tecum to the Government of the Republic of Colombia." This time, Diaz seeks "the production of documents related to the cooperation, investigation, and prosecution involving" Diaz. But Diaz again fails to meet the requirements of Federal Rule of Criminal Procedure 17, so his request should be denied.

## I. Background

### *a. Facts of the Case*

This case involves the covert placing of SPOT trace trackers—satellite GPS trackers—on Colombian Navy ship by members of the Colombian Navy. Like the United States Coast Guard, the Colombian Navy serves a drug interdiction function. By placing these trackers on naval ships, these Navy officers could tip off drug traffickers on the best routes to send their cargo. Diaz was a part of this scheme.

### *b. Procedural History*

Diaz—along with his codefendants—were indicted by a grand jury on

September 28, 2023. The Government superseded its indictment on December 7, 2023. After that, the Government sought and obtained Diaz's extradition from Colombia to the United States. Diaz had his initial appearance before the Court on March 14, 2025. *See* Doc. 87. He awaits trial.

During pretrial exchanges, the Government produced documents to Diaz that the Government received from the Government of Colombia. These documents include information about investigative actions that individuals in Colombia took regarding Diaz. Through pretrial proceedings, too, Diaz has moved twice for the Court to issue letters rogatory. First, Diaz moved for a letters rogatory that would ask Colombia for permission for Diaz to depose his sister. That request was granted and the deposition remains pending. Second, Diaz asked for a scattershot of documents. *See* Doc. 340. The Court rejected that request, *see* Doc. 355, because Diaz sought "broad discovery requests" which were "prohibited under Rule 17(c)." Diaz's third request for letters rogatory followed.

## II. Argument

"The standard for issuance of a letter rogatory is the same as if the evidence were located in the United States." *United States v. Van Avermaet*, No. 21-cr-443-TSC-ZMF-4, 2024 WL 3835320, at *1 (D.D.C. Aug. 15, 2024) (outgoing letters rogatory); *accord United States v. Hoskins*, 2015 WL 4874921, at *5 (D. Conn. Aug. 14, 2015) (ruling on motion seeking outgoing letters rogatory) (cleaned up). Thus, Diaz must "satisfy both the requirements of Federal Rule of Criminal Procedure 17 and *United States v. Nixon*[, 418 U.S. 683, 698 (1974)] to obtain evidence that is located

abroad." *Van Avermaet*, 2024 WL 3835320, at *1; *Hoskins*, 2015 WL 4874921, at *5; *United States v. Sikkema*, 2026 WL 657168, at *3 (S.D.N.Y. Mar. 9, 2026).

To receive a Rule 17 subpoena, Diaz must demonstrate "(1) relevancy; (2) admissibility; and (3) specificity." *United States v. Ramirez Reyes*, 2025 WL 452489, at *1 (M.D. Fla. Feb. 5, 2025). Diaz's motion continues to lack specificity. Without establishing specificity, "Defendant's requests do not satisfy Rule 17(c) standards," so the request should be denied once again. *United States v. Weisberg*, 2010 WL 5027537, at *2 (E.D.N.Y. Dec. 3, 2010).

Diaz's request still sits on speculation. "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, the specificity requirement is not met and the requests will be denied." *United States v. Treacy,* Case No. 08–CR–0366(RLC), 2008 WL 5082884, at *2–3 (S.D.N.Y. Dec. 1, 2008).[1] Here, Diaz has not reasonably specified the information contained or believed to be contained in the documents sought. His requests for the documents are littered with speculation. He claims that, for example, the medical records he seeks *"may establish*" (emphasis added) that Diaz could not have attended a relevant meeting. Diaz—who should know whether he was in the hospital when these meetings happened—cannot say that they *would* establish his unavailability. Similarly, he says that "Colombian

[1] At least some of Diaz's requested documents may not be relevant. For example, his first category of documents is not relevant to any noticed defense. And for that category of documents, Diaz lays out no time period that may help the Court assess relevance.

decrees and public-health mandates from that same period *may* bear directly on whether such a meeting could have occurred in the manner alleged." (emphasis added). Putting aside the fact that government rules have not prevented Diaz from breaking them in the past, this assertion speculates about what these publicly available documents may show. And these document requests still seek broad categories of documents. As an example, he does not seek specific Colombian health decrees by decree number or otherwise.[2] These requests read more like requests for production under Fed. R. Civ. P. 34, not narrowly tailored demands for documents to be used at trial. *E.g.*, Mot. at 7 (requesting "*any*" document that exists in Diaz's first category); *id.* (requesting copies of "Colombian decrees . . . concerning . . .public health measures"). That provides a basis to deny the request.

In a related vein, Diaz argues that "the documents [sought] are not otherwise reasonably procurable in advance of trial." For his latter two categories of documents, that is not true. Colombian health decrees are available online, as mentioned earlier in this response, and Diaz should have control over his own medical documentation. Diaz has laid out no steps he took to try and obtain his medical records from Colombia. And while Diaz is detained, he maintains representation who could obtain these documents.

* * *

[2] These decrees appear to be readily available online, and Diaz has not presented any reason why these decrees (available online) are not enough or why the lengthy letters rogatory process is needed to obtain then. *E.g.*, Decreto 417 de 2020, *available at* https://www.funcionpublica.gov.co/eva/gestornormativo/norma.php?i=110334.

While not addressed in his Motion, Diaz also includes a line in his proposed letters rogatory that asks the Court to require the Government to pay "the fees and costs incurred" by the request. Afterwards, he cites provisions of the Justice Manual (previously known as the U.S. Attorney's Manual) that lays out Department policy to pay expense for depositions of fact witness. But Diaz does not seek the deposition of a fact witness here. And he points to no other basis for the United States to pay for the fees associated with this additional letters rogatory request. Without a basis in the law to shift payment to the Government, should the Court issue the requested letters rogatory, the Court should decline to order the Government to pay transmission costs for the letters rogatory.

## III. Conclusion

Based on the record before the Court, the Motion should be denied.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/ Michael J. Buchanan*
Michael J. Buchanan
Assistant United States Attorney
Fla. Bar No. 1020224
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Michael.Buchanan2@usdoj.gov

**U.S. v. Luis Diaz Martinez** **Case No. 8:23-cr-342-JSM-SPF**

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Michael J. Buchanan*

Michael J. Buchanan
Assistant United States Attorney
Fla. Bar No. 1020224
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Michael.Buchanan2@usdoj.gov